FILED by _GME_ D.C.

SEP 1 0 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: **09-22700**

State Case No.: 09-50417 CA 06

YAMILE A. GOMEZ, and                    )
MANUEL JESUS GOMEZ, her husband,        )          CIV-UNGARO
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )
                                        )          MAGISTRATE JUDGE
PFIZER, INC., a Delaware Corporation for Profit, )   SIMONTON
MCNEIL-PPC, INC., and New Jersey Corporation )
for Profit, JOHNSON & JOHNSON COMPANY,  )
a New Jersey Corporation for Profit, and )
PUBLIX SUPER MARKETS, INC.,             )
a Florida Corporation for Profit,       )
                                        )
        Defendants.                     )
_____)

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants

Johnson & Johnson (incorrectly identified in the Complaint as "Johnson & Johnson Company"

and McNEIL-PPC, Inc. (collectively, "Defendants"), hereby file this Notice of Removal from the

Circuit Court in and for Miami-Dade County, Florida to the United States District Court for the

Southern District of Florida.  The grounds for removal are as follows:

### THE REMOVED CASE

1.      The removed case is a civil action filed on or about July 6, 2009, in the Circuit

Court in and for Miami-Dade County, Florida, having been assigned Case No. 09-50417 CA 06,

and captioned *Yamile A. Gomez, et al. v. Pfizer, Inc. et al.*

2.      This is a claim for alleged injuries and damages arising from Plaintiff Yamile A.

Gomez's use of several prescription and/or over-the-counter medicines in July 2005.  Plaintiffs

15557900.5

assert product-liability claims based on alleged defects in one or more of those medicines.

## PAPERS FROM REMOVED ACTION

3.      As required by 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and

other papers or exhibits filed in the state court are attached. *See* State Court File (attached as

Exhibit A).

## THE REMOVAL IS TIMELY

4.      Plaintiffs commenced this action on or about July 6, 2009.  The Complaint was

not initially removable under 28 U.S.C. § 1446(b) because it lacked the clear, unambiguous

showing of the factual basis for diversity jurisdiction necessary under *Lowery v. Alabama Power*

*Co.*, 483 F.3d 1184, 1213-15 (11th Cir. 2007).  Indeed, the Complaint included only bare

pleadings of Plaintiffs' residency (not citizenship) and damages in excess of only the state court

jurisdictional threshold. *See* Compl. ¶¶ 1-2.  It lacked any unambiguous or unequivocal showing

of diversity jurisdiction. *See Lowery*, 483 F.3d at 1213 n.63 (noting "it is highly questionable

whether a defendant could ever file a notice of removal on diversity grounds . . . where the

defendant . . . has only bare pleadings containing unspecified damages on which to base its

notice"); *see also Belkin v. Home Depot U.S.A., Inc.*, No. 07-61368-CIV, 2007 WL 4247685, *1

(S.D. Fla. Dec. 3, 2007) (applying *Lowery* and holding that "the operative document must

unambiguously establish federal jurisdiction.").

5.      In such circumstances, section 1446(b) allows removal of initially non-removable

complaints within one year of commencement and within 30 days after receipt "of an amended

pleading, motion, order or other paper from which it may first be ascertained that the case is one

which is or has become removable." 28 U.S.C. § 1446(b); *Lowery*, 483 F.3d at 1213 n.63

(noting removal under second paragraph of section 1446(b) when "a case becomes removable").

The receipt of correspondence or e-mail from Plaintiffs' counsel qualifies as an "other paper" that indicates diversity jurisdiction. *See Lowery*, 483 F.3d at 1212 n.62 (listing e-mail as an example of "other paper") (*citing Callahan v. Countrywide Home Loans, Inc.*, No. 3:06CV105 RV/MD, 2006 WL 1776747, *3-*4 (N.D. Fla. June 26, 2006) (e-mail on damages); *Del Rio v. Scottsdale Ins. Co.*, No. 6:05-CV-1429-ORL-19-JGG, 2005 WL 3093434, *4 (M.D. Fla. Nov. 18, 2005) (holding "it is clear that 'an other paper' which puts the defendant on notice that the jurisdictional amount is in controversy must at least be correspondence sent from a member of the opposing party to the defendant.").

6.      Here, on August 14, 2009, Defendants received confirmation by e-mail from Plaintiffs' counsel that established the basis for diversity jurisdiction. *See* August 14, 2009, correspondence (attached as Exhibit B).  Plaintiffs' counsel confirmed that Plaintiffs are, and were at the time of filing this action, Florida citizens. *See id.*  Plaintiffs' counsel also confirmed that the amount in controversy exceeds and, at the time of filing the complaint exceeded, $75,000, exclusive of interest and costs. *See id.*

7.      Plaintiffs' response is the first indication of the clear factual showing necessary for removal under diversity jurisdiction. *See Lowery*, 483 F.3d at 1213-15.  Trial courts throughout the Eleventh Circuit consistently apply *Lowery* to hold indeterminate state court complaints, such as Plaintiffs' here, as initially non-removable. *See, e.g., Enterline v. Sears, Roebuck and Co.*, No. 2:08-cv-221-JES-DNF, 2008 WL 1766911, *2 (M.D. Fla. Apr. 15, 2008) (applying *Lowery* and finding the case "was not removable to federal court based on the initial pleadings"); *Luria-Akin v. Devonshire at PGA National, LLC*, No. 08-80349-CIV, 2008 WL 1745063 (S.D. Fla. Apr. 11, 2008) (remanding when neither complaint nor information from defendant proved diversity jurisdiction).  Courts subsequently allow removal upon receipt of

"other paper" that clearly indicates the required factual basis for diversity jurisdiction. Therefore, this Notice of Removal is timely filed within 30 days of receipt of the basis for diversity jurisdiction and within one year of commencement of the action.

## CONSENTS TO REMOVAL

8.      Defendant Pfizer Inc consents to this removal.  *See* Consent (attached as Exhibit C).

9.      As set forth more fully below, Publix is fraudulently joined in this action.  Thus, its consent to removal is unnecessary.  *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002);*see also Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *GMFS, LLC v. Bounds*, 275 F. Supp. 2d 1350, 1353 (S.D. Ala. 2003); *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1222 n.3 (M.D. Ala. 1999).

## THE VENUE REQUIREMENT IS MET

10.     Venue of this removal is proper under 28 U.S.C. § 1441(a) to the Southern District of Florida because the Circuit Court of Miami-Dade County, Florida is within the Southern District of Florida.

## DIVERSITY OF CITIZENSHIP EXISTS
## BETWEEN THE PROPERLY JOINED PARTIES

11.     This is a civil action that falls under the Court's original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and is one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §§ 1441 and 1446.

12.     Plaintiffs' complaint alleges they were residents of Miami-Dade County, Florida. *See* Compl. ¶ 2.  Plaintiffs' counsel confirmed on August 14, 2009, that Plaintiffs are, and were at the time of filing this action, Florida citizens.  *See* Ex. B.  Accordingly, Plaintiffs are citizens of Florida for purposes of determining diversity.

13.     Defendant Pfizer Inc is, and was at the time this action was filed, a corporation existing under the laws of the State of Delaware with its principal place of business in the State of New York.  Accordingly, Pfizer Inc is a citizen of Delaware and New York for purposes of determining diversity under 28 U.S.C. § 1332(c)(1).

14.     Defendant Johnson & Johnson is, and was at the time this action was filed, a corporation existing under the laws of New Jersey with its principal place of business in the State of New Jersey.  Accordingly, Johnson & Johnson is a citizen of New Jersey for purposes of determining diversity under 28 U.S.C. § 1332(c)(1).

15.     Defendant McNEIL-PPC, Inc. is, and was at the time this action was filed, a corporation existing under the laws of New Jersey with its principal place of business in the State of New Jersey.  Accordingly, McNEIL-PPC, Inc., is a citizen of New Jersey for purposes of determining diversity under 28 U.S.C. § 1332(c)(1).

16.     Defendant Publix is, and was at the time this action was filed, a Florida corporation with its principal place of business in Florida.  Publix is fraudulently joined and its presence in this action does not destroy diversity and prevent removal.  Its citizenship must, therefore, be disregarded for the purposes of diversity analysis.  *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996).

17.     Because the Plaintiffs are citizens of Florida and the properly joined defendants are not, complete diversity exists under 28 U.S.C. § 1332.

## PUBLIX IS FRAUDULENTLY JOINED

18.     In determining whether diversity jurisdiction exists, the Court must disregard the citizenship of fraudulently joined parties.  *See Tapscott*, 77 F.3d at 1360; *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561-62 (11th Cir. 1989).  A defendant is fraudulently joined where

there is no "reasonable basis" for a claim against it. *See Crowe v. Coleman*, 113 F.3d 1536, 1542

(11th Cir. 1997). While some cases may state that "no possibility" of a claim must exist, courts

have held that this language "cannot be taken literally" and that "the standard more accurately is

described as requiring a showing that there is '*no reasonable basis*' for predicating liability on

the claims alleged." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y.

2001) (emphasis added).

19.     The "no reasonable basis" standard is applied by the Eleventh Circuit and other

Courts of Appeals. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) ("The

potential for legal liability 'must be reasonable, not merely theoretical.' In considering *possible*

state law claims, possible must mean 'more than such a possibility that a designated residence

can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and

common sense have some role.'") (emphasis in original); *Crowe*, 113 F.3d at 1542; *see also BP*

*Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002); *Badon v. RJR Nabisco,*

*Inc.*, 224 F.3d 382, 393 (5th Cir. 2000).

20.     Under Eleventh Circuit law, when a defendant puts forth evidence of fraudulent

joinder, the burden then shifts to the plaintiff to rebut that evidence and show that a reasonable

basis for a claim exists against the fraudulently joined defendant. *See Legg*, 428 F.3d at 1323-24.

A plaintiff may not do so by merely standing on the allegations in the complaint. *See id.* at 1323.

### Background

21.     At all times relevant to this litigation, Publix's only involvement, if any, with any

prescription medicine allegedly dispensed to Plaintiff was the filling of such a prescription in

accord with the physician's instructions. *See* Declaration of Paul Hines ¶ 4 (attached as Exhibit

D). Likewise, Publix's only involvement, if any, with any over-the-counter medicine allegedly

used by Plaintiff was the receipt and sale of such medicine in its original sealed, unbroken container. *See id.* ¶ 5. Publix had no role in preparing any such over-the-counter medicine. *See id.* Moreover, Publix had no involvement in designing, manufacturing, or packaging any of the medicines allegedly used by Plaintiff, no knowledge of any alleged defective condition, and no reason to know of any alleged danger. *See id.* ¶¶ 3, 6-7.

22.     Nonetheless, Plaintiffs assert that Publix is strictly liable for Plaintiffs' injuries. *See* Compl. ¶¶ 6, 9, 80-86. Plaintiffs allege that Publix filled Yamile Gomez's prescription for Zoloft, *see id.* ¶ 6, and that Mrs. Gomez also obtained either prescription or over-the-counter Motrin and/or Tylenol[1] from Publix "as prescribed by her physician." *Id.* ¶¶ 6, 8-9, 80-81. No reasonable basis exists for that strict-liability claim based on allegations that Publix simply sold retail medicine.

### There is No Reasonable Basis for the Strict-Liability Claim against Publix

23.     Plaintiffs have no possibility of recovery, let alone a reasonable basis for this claim, against Publix because Florida law recognizes no such cause of action for strict liability against a pharmacy or pharmacist under these facts.

24.     Strict liability does not apply to a pharmacy for filling a prescription. *See McLeod v. W. S. Merrell Co.*, 174 So. 2d 736, 739 (Fla. 1965) (rejecting argument by plaintiff "to impose upon [] retail prescription druggists an absolute, strict liability without fault in an action in tort."); *Fontanez v. Parenteral Therapy Assocs., Inc.*, 974 So. 2d 1101, 1102 (Fla. 5th DCA 2007) (affirming summary judgment on strict-liability claim because "such theor[y] did not apply to a retail prescription pharmacist.").

---

[1]     Count VII, the strict-liability count against Publix, refers solely to over-the-counter Motrin and Tylenol. The allegations common to all counts, however, which are incorporated by reference into Count VII, refer to prescription and over-the-counter Motrin and/or Tylenol and fail to clearly identify whether Plaintiff obtained Motrin or Tylenol from Publix. Thus, it is unclear whether Plaintiff allegedly purchased prescription or over-the-counter Tylenol and/or Motrin from Publix.

25.     Federal courts applying Florida law routinely hold that pharmacies are fraudulently joined because "a pharmacy may not be held liable for dispensing drugs in accordance with duly written prescriptions." *In re Rezulin Prods. Liab. Litig.*, No. 00 CIV.2843(LAK), MDL 1348, 2002 WL 511550, *1 (S.D.N.Y. Apr. 4, 2002).  Likewise, the law of Florida under *McLeod* "proscribe[s] strict liability for the retail selling of prescription drugs." *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, Civ.A. 03-20765, 2004 WL 1824357, *6 (E.D. Pa. Aug. 12, 2004); *see generally Layton v. SmithKline Beecham Corp.*, No. 8:05-CV-2107-T27-EAJ, 2006 WL 2194498, *1-*2 (M.D. Fla. Aug. 2, 2006) (recognizing general limitation of claims for filling a prescription).

26.     Florida law accords with the overwhelming majority of other jurisdictions on this point. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 288-294 (recognizing that "[a]lmost every state confronted with the question" has "shielded pharmacists from liability on [] strict liability" and holding pharmacies fraudulently joined under the law of multiple jurisdictions); *see also In re Baycol Prods. Litig.*, No. 1431 (MJD/JGL), Civ. 03-4954, 2004 WL 1118642, *3-*4 (D. Minn. May 17, 2004) (applying Mississippi law); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD), 2003 WL 22331294, *2 (D. Minn. May 19, 2003) (applying California law); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD/JGL), 2003 WL 22038708, *7-*9 (D. Minn. Feb. 25, 2003) (applying West Virginia law).

27.     Here, Plaintiffs allege that Publix is strictly liable for simply filling prescriptions for Zoloft, Motrin, and/or Tylenol. *See Compl.* ¶¶ 6, 8-9.  That claim lacks any basis under bedrock Florida law. *See, e.g., McLeod*, 174 So. 2d at 739; *Fontanez*, 974 So. 2d at 1102.  It also lacks any basis under the facts of this case as Publix never dispensed prescription Zoloft, Motrin or Tylenol to Plaintiff. *See* Paul Hines Decl. ¶ 4.  If it dispensed any other prescriptions, it did so

as instructed by Plaintiff's physicians. *See id.* Accordingly, Publix is fraudulently joined.

28.     Moreover, to the extent that Plaintiffs also allege use of over-the-counter medicines, *see* Compl. ¶ 80, Florida law also bars that claim. In *Johnson v. Walgreen Co.*, 675 So. 2d 1036, 1037-38 (Fla. 1st DCA 1996), the court expanded *McLeod* to cover over-the-counter products. In *Johnson*, the plaintiff used both prescription and over-the-counter medicines. *See id.* at 1037. Moreover, the plaintiff specifically alleged that the pharmacy that sold the over-the-counter medicine breached its duty of care by recommending an inappropriate and dangerous over-the-counter product for that particular patient. *See id.* Affirming dismissal, the court applied *McLeod* and other Florida law and held it was "unable to distinguish the facts in *McLeod* [] from the instant case." *Id.* at 1037-38. Thus, even when a plaintiff alleges that a pharmacy took affirmative action regarding the purchase of an over-the-counter medicine, no strict-liability claim exists against the pharmacy.

29.     Indeed, that holding extending the protections afforded by *McLeod* to over-the-counter products fits the reasoning underlying both *McLeod* and *Fontanez*. In *McLeod*, the court noted that the pharmacy did nothing other than sell a sealed product in its unbroken container. *See* 174 So. 2d at 737-38. The manufacturer "prepared the drug" and the pharmacy "received it in the original sealed packets" to thereafter be "sold at retail to [plaintiff] in the original unbroken containers without analysis by the [pharmacy]." *Id.* Those circumstances fit the circumstances in the sale, if any, of an over-the-counter product in this case, and the general circumstances involved in the sale of most, if not all, over-the-counter products. *See* Paul Hines Decl. ¶¶ 5-7.

30.     Likewise, the *Fontanez* court based its holding on the same analogous reasoning and noted the distinction between preparing or compounding a prescription and merely

dispensing a product:

> When a pharmacist merely resells a drug that he or she has received from a manufacturer, the pharmacist is playing no role in the preparation of the product, but is simply dispensing the drug. The *McLeod* court found that the imposition of strict liability on a pharmacist simply dispensing a prescription drug would improperly convert retail pharmacists into insurers of the safety of the manufactured drug.

974 So. 2d at 1105. As a result, *Fontanez* further supports the application of *McLeod* and *Johnson* here based on any allegation that Publix simply sold over-the-counter medicine in its original sealed, unbroken container. *See* Paul Hines Decl. ¶ 5. For that matter, any other result is incongruous and illogical because it would result in a pharmacy being immune from strict liability for actually filling and dispensing a prescription medicine but subject to strict liability for just selling an over-the-counter medicine.

31. Thus, Plaintiffs lack any reasonable basis for recovery against Publix as alleged under strict liability.[2]

## THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED

32. Plaintiffs seek compensatory damages arising out of the use of several prescription and/or over-the-counter drugs. Plaintiffs allege that Plaintiff Yamile Gomez suffered "bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, and aggravation of a previously existing condition. The losses described are either permanent or continuing in

---

[2] As a solely derivative claim, the loss-of-consortium claim fails as well. *See Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971) (a spouse "may recover only if her husband has a cause of action against the same defendant."); *ACandS, Inc. v. Carol H. Redd*, 703 So. 2d 492, 494 (Fla. 3d DCA 1997) (*quoting Faulkner v. Allstate Ins. Co.*, 367 So.2d 214, 217 (Fla. 1979)) ("[a wife's] claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover"); *Davis v. Asbell*, 328 So. 2d 204, 205 (Fla. 1st DCA 1976) ("[t]he derivative cause of action for loss of consortium is subordinate to the primary action, and being so, that a judicial determination in the primary action as to the question of liability is binding upon the subordinate action for loss of consortium.").

nature and Plaintiff will suffer such losses in the future." Compl. ¶¶ 25, 37, 46, 58, 67, 79, 86.

33.     Plaintiffs confirmed on August 14, 2009, that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* Ex. B. As a result, the amount-in-controversy requirement is met.

34.     Thus, the state-court action may be removed to this Court by Defendants Johnson & Johnson and McNeil-PPC, Inc. in accordance with the provisions of 28 U.S.C. § 1441(a) because (i) this action is a civil action pending within the jurisdiction of the United States District Court for the Southern District of Florida; (ii) excluding the fraudulently joined defendant, this action is between citizens of different states; and (iii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FILING OF REMOVAL PAPERS

35.     Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served to Plaintiffs' counsel, and a Notice of Filing of Notice of Removal is simultaneously being filed with the Clerk of the Circuit Court in and for Miami-Dade County, Florida. A true and correct copy of this Notice is attached. *See* Notice (attached as Exhibit E).

**WHEREFORE**, Defendants Johnson & Johnson and McNEIL-PPC, Inc. hereby remove the above-captioned action from the Circuit Court in and for Miami-Dade County, Florida, and request that further proceedings be conducted in this Court as provided by law.

Dated: September 10, 2009.

Respectfully submitted,

Penelope A. Dixon
Florida Bar No. 335680
David J. Walz
Florida Bar Number 697273
CARLTON FIELDS, P.A.

Post Office Box 3239
Tampa, Florida 33601
Telephone:    (813) 223-7000
Facsimile:    (813) 229-4133
E-Mail:       pdixon@carltonfields.com
              dwalz@carltonfields.com
Attorneys for McNEIL-PPC, Inc. and
Johnson & Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 10, 2009, the foregoing document was mailed

to the following: Alex Alvarez and Phillip E. Holden, 355 Palermo Avenue, Coral Gables, FL

33134; Hildy M. Sastre, Miami Center, Suite 2400, 201 S. Biscayne Blvd., Miami, FL 33131;

and, Dennis M. O'Hara, Jason A. Glusman and Rafferty Kellogg, P. O. Box 14460, Ft.

Lauderdale, FL 33302.

Penelope A Dixan
Attorney

# EXHIBIT A

## RM 1.997. CIVIL COVER SHEET



The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. (See instructions on the reverse of the form.)

## I. CASE STYLE

**Eleventh Judicial Circuit**
**Miami-Dade County, Florida**

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her Husband,

Case #: 09 – 5 0 4 1 7 CA 0 6

      Plaintiffs,

Judge: _____

v.

PFIZER, INC., a Delaware Corporation for Profit,
MCNEIL-PPC, INC., a New Jersey Corporation
for Profit, JOHNSON & JOHNSON COMPANY,
a New Jersey Corporation for Profit, and
PUBLIX SUPER MARKETS, INC.,
a Florida Corporation for Profit,

*Gail Thompson*

      Defendants.

## II. TYPE OF CASE: (Place an X on one line only.  If the case fits more than one type of case, select the most definitive.)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ___ Simplified Dissolution | ___ Professional Malpractice | ___ Contracts |
| ___ Dissolution | _X_ Products Liability | ___ Condominium |
| ___ Support - IV-D | ___ Auto Negligence | ___ Real Property/ |
| ___ Support Non IV-D | ___ Other Negligence |     Mortgage Foreclosure |
| ___ URESA- IV-D | | ___ Eminent Domain |
| ___ URESA  Non IV-D | | ___ Other |
| ___ Domestic Violence | | |
| ___ Other Domestic Relations | | |

## III. Is Jury Trial Demanded In Complaint?

  _X_  **Yes**
  ____  No

DATE: _7/6/09_   Signature of Attorney for Party Initiating Action  _____

ALEX ALVAREZ
Florida Bar No.: 946346

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL   CIRCUIT,   IN   AND   FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 02-7363 CA-01 (30)

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her Husband,

09 - 5 0 4 1 7 CA 0 6

        Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation for Profit,
MCNEIL-PPC, INC., a New Jersey Corporation
for Profit, JOHNSON & JOHNSON COMPANY,
a New Jersey Corporation for Profit, and
PUBLIX SUPER MARKETS, INC.,
a Florida Corporation for Profit,

Gail Thompson

        Defendants.

_____/

### COMPLAINT FOR DAMAGES

        Plaintiffs, YAMILE A. GOMEZ and MANUEL JESUS GOMEZ, by and through

undersigned counsel, sue Defendants, PFIZER, INC., a Delaware Corporation for Profit,

MCNEIL-PPC, INC., a New Jersey Corporation for Profit, JOHNSON & JOHNSON

COMPANY, a New Jersey Corporation for Profit, and PUBLIX SUPER MARKETS, INC., a

Florida Corporation for Profit, and allege:

#### *Jurisdiction & Parties*

        1.      This is an action for damages in excess of $15,000 and otherwise within the

jurisdictional limits of this Court, exclusive of interest and costs.

        2.      At all times material, Plaintiffs, YAMILE A. GOMEZ and MANUEL JESUS

GOMEZ, were and are married and residents of Miami-Dade County, Florida.

        3.      Defendant, PFIZER, INC. ("PFIZER"), is a foreign corporation with its principal



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

place of business outside the State of Florida.  PFIZER, designs, manufactures, and markets Zoloft, a type of antidepressant known as a selective serotonin reuptake inhibitor (SSRI), which is used to treat depression, and other psychological disorders and delivered it into the stream of commerce, including Miami Dade County, Florida.

4.    Defendants, MCNEIL-PPC, INC. ("MCNEIL") and JOHNSON & JOHNSON COMPANY ("JOHNSON & JOHNSON"), are foreign corporations with their principal places of business outside the State of Florida.  MCNEIL and JOHNSON & JOHNSON, design, manufacture, and market Motrin, an over the counter pain reliever containing ibuprofen, and Tylenol, an over-the-counter pain reliever containing acetaminophen, and delivered them into the stream of commerce, including Miami Dade County, Florida.

5.    MCNEIL, JOHNSON & JOHNSON, and PFIZER, INC., conduct business throughout the United States and in the State of Florida, directly and indirectly through their agents and distributors to such an extent that they avail themselves of the jurisdiction of this Court. Further, PFIZER, INC.

6.    At all times material, Defendant, PUBLIX SUPER MARKETS, INC. ("PUBLIX"), was and is a Florida Corporation doing business in Miami-Dade County, Florida, operating a pharmacy and market at 9755 N.W. 41st Street in Miami-Dade County selling over-the-counter health care products, including Motrin and Tylenol, and prescription medications, including Zoloft, to the public, including the Plaintiff.

### *Allegations Common to All Counts*

7.    On or about July 13, 2005, YAMILE A. GOMEZ was using Zoloft as prescribed by her physician.

2



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

8.      At that above time and place, YAMILE A. GOMEZ began suffering from severe headaches, body aches and fever.   She visited Baptist Outpatient Center in Miami-Dade County, Florida, where she was administered and or prescribed Tylenol and Motrin for pain relief.

9.      Upon discharge from Baptist Outpatient Center, YAMILE A. GOMEZ purchased Motrin and or Tylenol at PUBLIX and ingested both as prescribed by her physician.

10.     On July 14, 2005, YAMILE A. GOMEZ condition worsened and she returned to Baptist Outpatient Center due to increasing body aches and abdominal pain.  She was transferred to the emergency room of Baptist Hospital in Miami-Dade County, Florida and discharged with what was believed to be acute abdominal pain and a skin rash.

11.     YAMILE A. GOMEZ's condition continued to deteriorate and she returned to Baptist Hospital on July 15, 2005, where she was diagnosed with medication-induced Stevens - Johnson syndrome.

12.     On July 18, 2005, she was transferred to Cedars Hospital (n/k/a University of Miami Hospital) in Miami-Dade County, Florida and placed under the care of a Stevens - Johnson syndrome specialist.

13.     At all times material the YAMILE A. GOMEZ's use of PFIZER's Zoloft caused YAMILE A. GOMEZ to suffer Stevens - Johnson syndrome and further damages.

14.     At all times material YAMILE A. GOMEZ's use of MCNEIL's and JOHNSON & JOHNSON's Motrin caused YAMILE A. GOMEZ to suffer Stevens - Johnson syndrome and further damages.

15.     At all times material YAMILE A. GOMEZ's use of MCNEIL's and JOHNSON & JOHNSON's Tylenol caused YAMILE A. GOMEZ to suffer Stevens - Johnson syndrome and further damages.

3



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

16.     At all times material, the YAMILE A. GOMEZ's use of MCNEIL's and JOHNSON & JOHNSON's Zoloft, Motrin or Tylenol solely caused, or in combination with one another caused, YAMILE A. GOMEZ to suffer Stevens - Johnson syndrome and further damages.

### *Count I*
### *Negligence Claim Against PFIZER*

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

17.     At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Zoloft for sale to the general public, including Plaintiff.

18.     At all times material Plaintiff used Zoloft for its intended purpose and as directed.

19.     At all times material Defendants undertook activities to aggressively advertise and market Zoloft to physicians and the public, including Plaintiff.

20.     Defendants owed Plaintiff a duty, before Zoloft was sold on the market, to disclose the inherent and potential hazards, which the Defendants knew or through the exercise of reasonable care should have known.

21.     Defendants as designer, producer, manufacturer, distributor, marketer and seller of Zoloft, owed Plaintiff a duty to exercise reasonable care, including but not limited to exercising reasonable care as follows:

        a.  to use due care in designing, formulating, developing and manufacturing Zoloft so as to avoid the risks of Stevens - Johnson syndrome to individuals who used Zoloft;

        b.  to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Zoloft;

4



   c.  to warn Plaintiff of the known dangerous propensities associated with the use of Zoloft;

   d.  designing Zoloft in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury;

   e.  manufacturing Zoloft free of reasonable defects or dangerous propensities;

   f.  properly and reasonably monitoring Zoloft and its uses in the scientific, medical community and general population;

   g.  using reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Zoloft, in both the pre-marketing and marketing stages;

   h.  warning of any health hazards or dangers associated with the use of Zoloft discovered in the post marketing period; and

   i.  timely revising the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Zoloft.

22.    Defendants, as designer, producer, manufacturer, distributor, marketer and seller of Zoloft, acting through its employees, agents, and/or representatives, breached its duties owed to Plaintiff and was further negligent in any and all of the following particulars, but not limited thereto:

   a.  failing to design Zoloft in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury or death;

   b.  failing to manufacture Zoloft free of reasonable defects or dangerous propensities;

   c.  failing to inspect and test Zoloft to ensure that it is reasonably safe and free of defects;

   d.  failing to adequately test Zoloft;

   e.  failing to adequately warn of Zoloft' known dangerous propensities:

   f.  failing to monitor Zoloft and its uses in the scientific, medical community and general population;

   g.  failing to warn of any health hazards or dangers associated with the use of Zoloft;

THE ALVAREZ LAW FIRM ✦ 355 PALERMO AVENUE, CORAL GABLES, FLORIDA 33134 ✦ TELEPHONE (305) 444-7675 ✦ FACSIMILE (305) 444-0075



h. failing to use reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Zoloft;

i. failing to timely warn of any health hazards or dangers associated with the use of Zoloft discovered in the post marketing period;

j. failing to timely revise the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Zoloft;

k. by designing, manufacturing, testing, monitoring, distributing, labeling and selling of Zoloft, which Defendant knew or through the exercise of reasonable care and diligence should have known was dangerous or unreasonably dangerous and carried with it significant risk of injuries to its users;

l. failing to disclose and/or actively suppressing information that Zoloft caused statistically was defective and dangerous;

23.   Defendants knew or should have reasonably foreseen that its negligent acts and/or omissions would cause injury or death to the public, including Plaintiff.

24.   Plaintiff justifiably relied on Defendants' marketing and assurances of the safety of Zoloft and such reliance caused Plaintiff's injury.

25.   As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

6



## *Count II*
### *Strict Liability Claim Against PFIZER*

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

26.     At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Zoloft for sale to the general public, including Plaintiff.

27.     Defendants knew that Zoloft would be used and was used without inspection for defects by Plaintiff.

28.     Defendant placed Zoloft in the general stream of commerce where it was eventually consumed and used by Plaintiff.

29.     Zoloft was defectively designed and/or manufactured because its use resulted in a substantial and unreasonable likelihood of causing Stevens - Johnson syndrome, which rendered Zoloft unreasonably dangerous for its intended use.

30.     Zoloft was and is far more dangerous than an ordinary consumer would expect and was unsuitable for its intended use.

31.     Plaintiff was unaware of the dangerous propensities and defective condition of Zoloft.

32.     The Zoloft consumed and used by Plaintiff was in the same condition as when it left the Defendants' control and custody.

33.     Defendants could have reasonably foreseen or reasonably anticipated that Zoloft, in a defective condition, would injure the Plaintiff.

34.     When Plaintiff received the Zoloft it was unreasonably dangerous because it was dangerous to an extent beyond that which would be contemplated by the ordinary recipient who

7



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

possessed ordinary knowledge common to the Plaintiff's community as to its characteristics.

35.    The Zoloft sold, designed, manufactured and/or distributed by Defendants was also defective due to inadequate post-marketing warnings, instructions and testing because after the Defendants knew or should have known of the risk of medication-induced Stevens - Johnson syndrome St from Zoloft, Defendants failed to provide adequate warnings to users or consumers of the product and continued to promote Zoloft.

36.    Defendants could have provided adequate warnings to the Plaintiff regarding the dangers associated with Zoloft and failed to do so.

37.    As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.    These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

### Count III
### Negligence Claim Against MCNEIL and JOHNSON & JOHNSON

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

38.    At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Motrin for sale to the general public, including Plaintiff.

8



39.   At all times material Plaintiff used Motrin for its intended purpose and as directed.

40.   At all times material Defendants undertook activities to aggressively advertise and market Motrin to physicians and the public, including Plaintiff.

41.   Defendants owed Plaintiff a duty, before Motrin was sold on the market, to disclose the inherent and potential hazards, which the Defendants knew or through the exercise of reasonable care should have known.

42.   Defendants as designer, producer, manufacturer, distributor, marketer and seller of Motrin, owed Plaintiff a duty to exercise reasonable care, including but not limited to exercising reasonable care as follows:

   a. to use due care in designing, formulating, developing and manufacturing Motrin so as to avoid the risks of Stevens - Johnson syndrome to individuals who used Motrin;

   b. to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Motrin;

   c. to warn Plaintiff of the known dangerous propensities associated with the use of Motrin;

   d. designing Motrin in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury;

   e. manufacturing Motrin free of reasonable defects or dangerous propensities;

   f. properly and reasonably monitoring Motrin and its uses in the scientific, medical community and general population;

   g. using reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Motrin, in both the pre-marketing and marketing stages;

   h. warning of any health hazards or dangers associated with the use of Motrin discovered in the post marketing period; and

   i. timely revising the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Motrin.

9



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

43.     Defendants, as designer, producer, manufacturer, distributor, marketer and seller of Motrin, acting through its employees, agents, and/or representatives, breached its duties owed to Plaintiff and was further negligent in any and all of the following particulars, but not limited thereto:

a.  failing to design Motrin in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury or death;

b.  failing to manufacture Motrin free of reasonable defects or dangerous propensities;

c.  failing to inspect and test Motrin to ensure that it is reasonably safe and free of defects;

d.  failing to adequately test Motrin;

e.  failing to adequately warn of Motrin' known dangerous propensities:

f.  failing to monitor Motrin and its uses in the scientific, medical community and general population;

g.  failing to warn of any health hazards or dangers associated with the use of Motrin;

h.  failing to use reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Motrin;

i.  failing to timely warn of any health hazards or dangers associated with the use of Motrin discovered in the post marketing period;

j.  failing to timely revise the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Motrin;

k.  by designing, manufacturing, testing, monitoring, distributing, labeling and selling of Motrin, which Defendant knew or through the exercise of reasonable care and diligence should have known was dangerous or unreasonably dangerous and carried with it significant risk of injuries to its users;

l.  failing to disclose and/or actively suppressing information that Motrin caused statistically was defective and dangerous;

44.     Defendants knew or should have reasonably foreseen that its negligent acts and/or omissions would cause injury or death to the public, including Plaintiff.

10

45.     Plaintiff justifiably relied on Defendants' marketing and assurances of the safety of Motrin and such reliance caused Plaintiff's injury.

46.     As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.   These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

## *Count IV*
### *Strict Liability Claim Against MCNEIL and JOHNSON & JOHNSON*

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

47.     At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Motrin for sale to the general public, including Plaintiff.

48.     Defendants knew that Motrin would be used and was used without inspection for defects by Plaintiff.

49.     Defendant placed Motrin in the general stream of commerce where it was eventually consumed and used by Plaintiff.

50.     Motrin was defectively designed and/or manufactured because its use resulted in a substantial and unreasonable likelihood of causing Stevens - Johnson syndrome, which rendered

11



Motrin unreasonably dangerous for its intended use.

51.     Motrin was and is far more dangerous than an ordinary consumer would expect and was unsuitable for its intended use.

52.     Plaintiff was unaware of the dangerous propensities and defective condition of Motrin.

53.     The Motrin consumed and used by Plaintiff was in the same condition as when it left the Defendants' control and custody.

54.     Defendants could have reasonably foreseen or reasonably anticipated that Motrin, in a defective condition, would injure the Plaintiff.

55.     When Plaintiff received the Motrin it was unreasonably dangerous because it was dangerous to an extent beyond that which would be contemplated by the ordinary recipient who possessed ordinary knowledge common to the Plaintiff's community as to its characteristics.

56.     The Motrin sold, designed, manufactured and/or distributed by Defendants was also defective due to inadequate post-marketing warnings, instructions and testing because after the Defendants knew or should have known of the risk of medication-induced Stevens - Johnson syndrome from Motrin, Defendants failed to provide adequate warnings to users or consumers of the product and continued to promote Motrin.

57.     Defendants could have provided adequate warnings to the Plaintiff regarding the dangers associated with Motrin and failed to do so.

58.     As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.   These losses are either

12



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE,** Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

### *Count V*
### *Negligence Claim Against MCNEIL and JOHNSON & JOHNSON*

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

59.     At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Tylenol for sale to the general public, including Plaintiff.

60.     At all times material Plaintiff used Tylenol for its intended purpose and as directed.

61.     At all times material Defendants undertook activities to aggressively advertise and market Tylenol to physicians and the public, including Plaintiff.

62.     Defendants owed Plaintiff a duty, before Tylenol was sold on the market, to disclose the inherent and potential hazards, which the Defendants knew or through the exercise of reasonable care should have known.

63.     Defendants as designer, producer, manufacturer, distributor, marketer and seller of Tylenol, owed Plaintiff a duty to exercise reasonable care, including but not limited to exercising reasonable care as follows:

> a.  to use due care in designing, formulating, developing and manufacturing Tylenol so as to avoid the risks of Stevens - Johnson syndrome to individuals who used Tylenol;

13



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

b.  to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Tylenol;

c.  to warn Plaintiff of the known dangerous propensities associated with the use of Tylenol;

d.  designing Tylenol in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury;

e.  manufacturing Tylenol free of reasonable defects or dangerous propensities;

f.  properly and reasonably monitoring Tylenol and its uses in the scientific, medical community and general population;

g.  using reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Tylenol, in both the pre-marketing and marketing stages;

h.  warning of any health hazards or dangers associated with the use of Tylenol discovered in the post marketing period; and

i.  timely revising the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Tylenol.

64.    Defendants, as designer, producer, manufacturer, distributor, marketer and seller

of Tylenol, acting through its employees, agents, and/or representatives, breached its duties owed to

Plaintiff and was further negligent in any and all of the following particulars, but not limited thereto:

a.  failing to design Tylenol in a manner in which it would be reasonably safe so that, when administered and used as intended, it would not cause injury or death;

b.  failing to manufacture Tylenol free of reasonable defects or dangerous propensities;

c.  failing to inspect and test Tylenol to ensure that it is reasonably safe and free of defects;

d.  failing to adequately test Tylenol;

e.  failing to adequately warn of Tylenol' known dangerous propensities:

f.  failing to monitor Tylenol and its uses in the scientific, medical community and general population;

14

g.  failing to warn of any health hazards or dangers associated with the use of Tylenol;

h.  failing to use reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Tylenol;

i.  failing to timely warn of any health hazards or dangers associated with the use of Tylenol discovered in the post marketing period;

j.  failing to timely revise the drug labeling to include warnings as soon as there was reasonable evidence of an association of a serious hazard with Tylenol;

k.  by designing, manufacturing, testing, monitoring, distributing, labeling and selling of Tylenol, which Defendant knew or through the exercise of reasonable care and diligence should have known was dangerous or unreasonably dangerous and carried with it significant risk of injuries to its users;

l.  failing to disclose and/or actively suppressing information that Tylenol caused statistically was defective and dangerous;

65.  Defendants knew or should have reasonably foreseen that its negligent acts and/or omissions would cause injury or death to the public, including Plaintiff.

66.  Plaintiff justifiably relied on Defendants' marketing and assurances of the safety of Tylenol and such reliance caused Plaintiff's injury.

67.  As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.   These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

## Count VI
### Strict Liability Claim Against MCNEIL and JOHNSON & JOHNSON

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

68.     At all times material Defendants were in the business of selling, designing, manufacturing and distributing, *inter alia,* pharmaceutical and over-the-counter medication products including Tylenol for sale to the general public, including Plaintiff.

69.     Defendants knew that Tylenol would be used and was used without inspection for defects by Plaintiff.

70.     Defendant placed Tylenol in the general stream of commerce where it was eventually consumed and used by Plaintiff.

71.     Tylenol was defectively designed and/or manufactured because its use resulted in a substantial and unreasonable likelihood of causing Stevens - Johnson syndrome, which rendered Tylenol unreasonably dangerous for its intended use.

72.     Tylenol was and is far more dangerous than an ordinary consumer would expect and was unsuitable for its intended use.

73.     Plaintiff was unaware of the dangerous propensities and defective condition of Tylenol.

74.     The Tylenol consumed and used by Plaintiff was in the same condition as when it left the Defendants' control and custody.

75.     Defendants could have reasonably foreseen or reasonably anticipated that Tylenol, in a defective condition, would injure the Plaintiff.

76.     When Plaintiff received the Tylenol it was unreasonably dangerous because it was dangerous to an extent beyond that which would be contemplated by the ordinary recipient who

Gomez v. Pfizer, Inc., et al.
Complaint for Damages

possessed ordinary knowledge common to the Plaintiff's community as to its characteristics.

77.    The Tylenol sold, designed, manufactured and/or distributed by Defendants was also defective due to inadequate post-marketing warnings, instructions and testing because after the Defendants knew or should have known of the risk of medication-induced Stevens - Johnson syndrome from Tylenol, Defendants failed to provide adequate warnings to users or consumers of the product and continued to promote Tylenol.

78.    Defendants could have provided adequate warnings to the Plaintiff regarding the dangers associated with Tylenol and failed to do so.

79.    As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.   These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE,** Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

### Count VII
### Strict Liability Claim Against PUBLIX

Plaintiff, YAMILE A. GOMEZ, readopts and re-alleges paragraphs 1 through 16 as though fully set forth herein and further alleges:

80.    At all times material Defendant was a retailer of, *inter alia,* over-the-counter medication products including Motrin and Tylenol for sale to the general public, including Plaintiff.

17



Gomez v. Pfizer, Inc., et al.
Complaint for Damages

81.    On or about July 13, 2005, Defendant sold Motrin and Tylenol, to Plaintiff.

82.    The Motrin and Tylenol sold to Plaintiff by Defendant were defective and inherently dangerous.

83.    At all times material, Defendant had a duty to sell over over-the-counter medication products that were safe for use by the public, including Plaintiff.

84.    At all times material, the Motrin and Tylenol sold by Defendant to Plaintiff were used by Plaintiff for their intended purpose.

85.    On or about July 13, 2005, Plaintiff ingested the defective Motrin and Tylenol, which were purchased from Defendant.

86.    As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition.   These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, Plaintiff sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

### _Count VIII_
### _Claim for Loss of Consortium against Defendants_

Plaintiff, MANUEL JESUS GOMEZ, incorporates, by reference, paragraphs 1-86 as though fully set forth herein and further alleges:

87.    As a further direct and proximate cause of the above-described negligence, Plaintiff, MANUEL JESUS GOMEZ, has suffered and will continue to suffer for the indefinite future, the

THE ALVAREZ LAW FIRM ✦ 355 PALERMO AVENUE, CORAL GABLES, FLORIDA 33134 ✦ TELEPHONE (305) 444-7675 ✦ FACSIMILE (305) 444-0075

Gomez v. Pfizer, Inc., et al.
Complaint for Damages

loss of his wife's society, services, consortium and support.

**WHEREFORE**, Plaintiff, MANUEL JESUS GOMEZ, sues Defendants and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

Dated: July 6, 2009

Respectfully submitted,

Alex Alvarez, Esq.
Fla. Bar No. 946346
E-mail: alex@integrityforjustice.com
Phillip E. Holden, Esq.
Fla. Bar No. 14395
Email: phillip@integrityforjustice.com
**THE ALVAREZ LAW FIRM**
355 Palermo Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-7675
Facsimile: (305) 444-0075

## AFFIDAVIT OF SERVICE

State of Florida                    County of Dade                    Circuit Court

Case Number: 09-50417 CA 06

Plaintiff:
**YAMILE A. GOMEZ AND MANUEL JESUS GOMEZ, HER HUSBAND**
vs.
Defendant:
**PFIZER, INC., A DELAWARE CORPORATION FOR PROFIT MCNEIL-
PPC, INC., A NEW JERSEY CORPORATION FOR PROFIT, ET AL.**

For:
THE ALVAREZ LAW FIRM
355 Palermo Ave.
Coral Gables, FL 33134

Received by OJF SERVICES on the 9th day of July, 2009 at 1:03 pm to be served on **PUBLIX SUPER MARKETS,
INC., C/O JOHN A. ATTAWAY, JR., R.A., 3300 PUBLIX CORPORATE PARKWAY, LAKELAND, FL 33811-3311**

I, Andy Burgess, being duly sworn, depose and say that on the **13th day of July, 2009** at **3:10 pm, I:**

SERVED the within named CORPORATION by delivering a true copy of the **Summons / Complaint** with the date
and hour of service endorsed thereon by me to SARAH VARGAS as AGENT TO REGISTERED AGENT of the
within named corporation at the corporation's place of business, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in
good standing in the judicial circuit in which the process was served.

**Andy Burgess**
CPS #045

Subscribed and Sworn to before me on the 15th day
of July, 2009 by the affiant who is personally known to
me.

NOTARY PUBLIC

**OJF SERVICES**
**14707 South Dixie Highway**
**Suite 212**
**Miami, FL 33176**
**(786) 293-5750**
Our Job Serial Number: 2009004654
Ref: 13328

NEDRA N. POWELL
Comm# DD0815854
Expires 8/19/2012
Florida Notary Assn., Inc

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 0_ ._... CA-01 (30)

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her Husband,

0 9 - 5 0 4 1 7 CA 0 6

      Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation for Profit,
MCNEIL-PPC, INC., a New Jersey Corporation
for Profit, JOHNSON & JOHNSON COMPANY,
a New Jersey Corporation for Profit, and
PUBLIX SUPER MARKETS, INC.,
a Florida Corporation for Profit,

      Defendants.

_____/

## CIVIL ACTION SUMMONS
## SERVICE ON A CORPORATION

To Defendant:    **PUBLIX SUPER MARKETS, INC.**
             **by serving Registered Agent:**    **JOHN A. ATTAWAY, JR.**
                                        3300 Publix Corporate Parkway
                                        Lakeland, FL 33811-3311

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below:

**ALEX ALVAREZ, ESQ.**
Plaintiffs' Attorney
THE ALVAREZ LAW FIRM
355 Palermo Avenue, Coral Gables, FL 33134
Telephone:    (305) 444-7675
Facsimile:    (305) 444-0075

**THE STATE OF FLORIDA:**

**To Each Sheriff of Said State:**

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or

Petition in this action on the above-named Defendant(s).

JUL 0 6 2009

**DATED ON** this _____ day of _____, 2009.

HARVEY RUVIN, as Clerk of the Court

BY: _____
Deputy Clerk

UPS Internet Shipping: Shipment Label                                    Page 1 of 1

## UPS Internet Shipping: View/Print Label

1. **Print the label(s):**   Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the dotted line.**   Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers without a Daily Pickup**
   - Schedule a same day or future day Pickup to have a UPS driver pickup all of your Internet Shipping packages.
   - Hand the package to any UPS driver in your area.
   - Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services[SM] (including via Ground) are also accepted at Drop Boxes.
   - To find the location nearest you, please visit the 'Find Locations' Quick link at ups.com.

   **Customers with a Daily Pickup**
   - Your driver will pickup your shipment(s) as usual.

FOLD HERE



64480-7

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her
Husband,

            Plaintiffs,

vs.

PFIZER, INC., a Delaware Corporation
for Profit, MCNEIL-PPC, INC., a New
Jersey Corporation for Profit, JOHNSON
& JOHNSON COMPANY, a New Jersey
Corporation for Profit, and PUBLIX
SUPER MARKETS, INC., a Florida
Corporation for Profit,

            Defendants.

_____/

GENERAL JURISDICTION DIVISION

CASE NO. 09-50417 CA 06

## PUBLIX'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants, PUBLIX SUPER MARKETS, INC. (hereinafter "Publix"), files this

Motion to Dismiss the Allegations of Plaintiffs' Complaint and in support thereof states:

### INTRODUCTORY STATEMENT

This is a products liability lawsuit involving allegations that Plaintiff's ingestion

of Zoloft, Tylenol and Motrin, which was prescribed by her physician, ultimately caused

her to develop Stevens-Johnson syndrome.   Plaintiffs have not sufficiently pled the

ultimate facts of this case necessary to sustain a cause of action for strict products

liability against Publix nor have they stated a claim upon which relief can be granted.

Specifically, Plaintiffs allege that the Mrs. Gomez was prescribed Zoloft by her physician

on July 13, 2005.[1]   Immediately thereafter, Plaintiffs allege that Mrs. Gomez began

---

[1] Complaint at ¶ 7.

suffering sever headaches, body aches, and fever.[2] Mrs. Gomez sought treatment from Baptist Outpatient Center where she was allegedly either prescribed and/or administered Tylenol and/or Motrin.[3]   Upon discharge, Mrs. Gomez allegedly purchased Tylenol and/or Motrin from Publix and ingested both as prescribed by her physician.[4]

On July 13, 2009, Plaintiffs' Complaint ("Complaint") was served on Publix. Plaintiffs' Complaint contains allegations against Publix for strict products liability arising out of the sale of Tylenol and Motrin to Plaintiff. According to Plaintiffs, Publix was responsible for placing allegedly "defective" over-the-counter medicine (Tylenol and Motrin) into the stream of commerce.[5]   As discussed in further detail below, Plaintiffs' bald legal conclusion that the Tylenol and/or Motrin allegedly purchased at Publix was defective is entirely insufficient to survive dismissal and, accordingly, Publix's Motion to Dismiss must be granted.

## PLAINTIFFS HAVE NOT ADEQUATELY PLEAD THE ULTIMATE FACTS NECESSARY TO SUSTAIN THIS CAUSE OF ACTION

It is well-settled that a pleading is deemed insufficient if it contains mere statements of opinion or conclusions unsupported by specific, ultimate facts. *Price; Other Place of Miami, Inc. v. City of Hialeah Gardens*, 353 So.2d 861 (Fla. 3d DCA 1977), *cert. denied*, 364 So.2d 889 (Fla.1978); *Boyd v. Walker*, 251 So.2d 332 Fla. 3d DCA 1971)("Legal conclusions are not deemed admitted on a motion to dismiss, and the ultimate facts upon which the legal conclusions rests must be expressed.").

---

[2] Complaint at 8.
[3] Complaint at ¶ 8.
[4] Complaint at ¶ 9.
[5] Complaint at ¶ 80.

2

In this case, the <u>only</u> "facts" alleged by Plaintiffs against Publix are that Mrs. Gomez purchased Tylenol and/or Motrin from Publix and that she subsequently suffered particular symptoms. In its claim against Publix, Plaintiffs do not provide a single fact supporting its allegation that the over-the-counter medication was defective. Over-the-counter medication, much like prescription medication, will have different effects when used by different patients, and physicians must exercise their independent medical judgment when deciding whether to utilize a product, taking into account the patient's susceptibilities, and weighing the risks and benefits for the individual patient. *See Buckner v. Allergan Pharmaceuticals, Inc.*, 400 So.2d 820, 822 (Fla. 5th DCA 1981). The courts have held that the mere occurrence of Plaintiffs' symptoms, without more, does not plausibly suggest a defect as required to avoid dismissal. *See e.g. E.R. Squibb & Sons, Inc. v. Stickney*, 274 So.2d 898, 905-06 (Fla. 1st DCA 1973)(holding that the fact that plaintiff's body rejected a cortical implant did not suggest that the implant was defective).

The Plaintiffs' Complaint here contains absolutely no allegations of fact to raise the claim of defect above the level of speculation, and instead offer precisely the sort of bald legal conclusions that are insufficient to avoid dismissal.

## PLAINTIFFS' FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The allegations contained in Plaintiffs' Complaint unequivocally fail to state a cognizable cause of action against Publix. Specifically, Plaintiffs' Complaint does not put forth a single allegation claiming that Publix, via its pharmacy or grocery store,

improperly filled, compounded, tampered with, or contaminated the over-the-counter medication purchased by the Plaintiff. To be clear, contrary to Plaintiffs' <u>bald legal conclusions</u> regarding the alleged defect and inadequate labeling (which are not even specifically alleged in the count against Publix), Publix had absolutely no involvement with the design, manufacture, research, testing, marketing, labeling, packaging, or regulatory approval of these medications. Rather, as Plaintiffs are certainly aware, Publix's involvement was limited solely to selling Tylenol and Motrin to the Plaintiff, pursuant to a valid prescription from her physician.

Florida courts have held that allegations pertaining to adverse reactions resulting from the interaction of prescription and over-the-counter medication do not give rise to a cause of action against the retailer of the over-the-counter medication. *Johnson v. Walgreen Co.*, 675 So. 2d 1036 (Fla. 1st DCA 1996), is particularly on point. In *Johnson v. Walgreen Co.*, the appellant's late husband suffered from numerous health problems, for which he was seeing a number of doctors for treatment, each of whom prescribed different medications. Although, the prescriptions were lawful and were filled accurately; in combination, they had potentially lethal effects. The pharmacist did not advise Mr. Johnson or his doctors of this fact. ***Additionally, the pharmacist actually recommended that Mr. Johnson take Benadryl, an over-the-counter allergy medication that was allegedly inappropriate for someone taking the drugs that Mr. Johnson was prescribed.*** Eventually, the prescription drugs interacted fatally, causing Mr. Johnson's death from multiple drug toxicity. *Id.* The Court granted Walgreen's Motion to Dismiss holding that there is no private cause of action against a pharmacy filling a valid prescription in the

4

State of Florida even where the pharmacist recommended a counter-indicated over-the-counter medication. *Id.* The Court specifically stated that, "[w]hile we recognize that there are policy arguments for imposing liability under these circumstances, such policy arguments are best made in the legislative context." *Id.* at 1038.

Moreover, it has been held that a retail grocery store will not be held liable for the sale of defective Tylenol *even when the Tylenol was actually tampered with* (laced with potassium cyanide by a third party), replaced on the store shelves, and ultimately caused the death of the victim. *See e.g., Elsroth v. Johnson & Johnson,* 700 F.Supp. 151 (S.D.N.Y., 1988).

The facts of this case do not even come close to rising to the level of the alleged wrongful activity in the above cases. Publix did not recommend, nor tamper with, any of medication allegedly ingested by Mrs. Gomez. Publix's alleged role, if any, was strictly limited to the sale of over-the-counter medication pursuant to a valid prescription. In this case, Plaintiffs have not even attempted to contend that there was any impropriety by Publix in any manner whatsoever. Accordingly, since Plaintiffs have wholly failed to assert any basis for holding Publix liable for the alleged adverse effects sustained by Mrs. Gomes resulting from the interaction of prescribed medications, Plaintiffs' cause of action is entirely baseless and must be dismissed.

## CONCLUSION

For the foregoing reasons, Publix respectfully requests that this Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief may be granted, and for such other relief as is appropriate.

CASE NO. 09-50417 CA 06

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was mailed this _13th_

day of August, 2009 to all parties on the attached service list.

WICKER, SMITH, O'HARA, MCCOY &
FORD, P.A.
Attorney for Publix Super Markets, Inc.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
P.O. Box 14460
Ft. Lauderdale, FL 33302
Phone: (954) 847-4800
Fax: (954) 760-9353

By: _____
**Dennis M. O'Hara**
Florida Bar No. 148434
**Jason A. Glusman**
Florida Bar. No. 0419400
**Rafferty Kellogg**
Florida Bar No. 17349

CASE NO. 09-50417 CA 06

Service List

Alex Alvarez, Esquire
The Alvarez Law Firm
355 Palermo Avenue
Coral Gables, FL   33134

IN THE CIRCUIT COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her husband,

     Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation for
Profit, MCNEIL-PPC, INC., a New Jersey
Corporation for Profit, JOHNSON &
JOHNSON COMPANY, a New Jersey
Corporation for Profit, and PUBLIX
SUPERMARKETS, INC., a Florida
Corporation for Profit,

     Defendants.

_____/

Case No.: 02-7363-CA-06

## **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants, McNEIL-PPC, Inc. ("McNeil") and Johnson & Johnson (incorrectly

identified in the complaint as "Johnson & Johnson Company") ("J&J") (collectively,

"Defendants"), through their attorneys and pursuant to Rule 1.140(b)(6), Florida Rules of Civil

Procedure, move to dismiss Plaintiffs' Complaint and state:

1.     The Complaint fails to plead ultimate facts in support of elements of Plaintiffs'

claims, whether they are based in strict liability or negligence. Additionally, Plaintiffs' attempted

negligence and strict liability claims are hopelessly intermingled. Because the underlying claims

fail to plead facts sufficient to state causes of action, the derivative loss of consortium must also

fail. Thus, dismissal is warranted.

2.     A complaint "must set out the elements and the facts that support them so that the

court and the defendant can clearly determine what is being alleged" and "must set forth factual

assertions that can be supported by evidence which gives rise to legal liability. It is insufficient

to plead opinions, theories, legal conclusions, or argument." *Barrett v. City of Margate*, 743 So. 2d 1160, 1162-63 (4th DCA 1999); *Horowitz v. Laske*, 855 So. 2d 169, 172-73 (5th DCA 2003) (requiring the parties "to state what ultimate facts pleaded in the complaint satisfied the elements of the tort," recognizing that "Florida is a fact-pleading jurisdiction," and holding that "Florida's pleading rule forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it").

     3.     Under Florida law, a product liability plaintiff may proceed under theories of strict liability and/or negligence. *See Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1049-50, 1052 (Fla. 1981); *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (4th DCA 1998). Although a plaintiff may pursue either theory or both theories, the doctrines of strict liability and negligence are separate and distinct from each other. *See Ferayorni*, 711 So. 2d at 1170.   Under either doctrine, a plaintiff in a product liability case must prove a defect in the product. *See Rodriguez v. Nat'l Detroit, Inc.*, 857 So. 2d 199, 201 (3d DCA 2003) (plaintiff must prove defect "in a products liability action brought under a theory of either strict liability or negligence" ); *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1143 (1st DCA 1981) (plaintiffs bear "the burden, whether their case is founded in negligence . . . or strict liability, of establishing (1) that a defect was present in the product"). Thus, under a negligence theory, a plaintiff may allege and seek to prove negligent manufacture, negligent design, and/or negligent failure to warn.   Under a strict liability theory, a plaintiff may allege and seek to prove a strict liability manufacturing defect, strict liability design defect, and/or strict liability failure to warn.   As with the overall theories, however, the three types of defects within either negligence or strict liability are analytically distinct and must be factually pled and proved in different ways.

4.      Plaintiffs fail to specify which type of negligent theory they assert and what facts support the allegedly negligent manufacture, design or warnings. Whichever attempted alleged theories of negligence – manufacture, design, or failure to warn – all are conclusory and fail to allege anything more than a recitation of the elements of duty and breach generally, a generalized recitation of alleged breaches, untethered to any actual facts, and the conclusion that those alleged breaches caused injury to Plaintiff Yamile Gomez. In fact, Counts III and V fail to even identify a negligent act by Defendants, much less how such an act caused harm to Plaintiffs.

5.      Likewise, Plaintiffs' strict liability claims (Counts IV and VI) must be dismissed because they fail to assert the elements nor the ultimate facts, which would support the elements, necessary to plead a strict products liability claim. *Barrett v. City of Margate*, *supra*; *Rice v. Walker*, 359 So. 2d 891, 892 (3d DCA 1978) (dismissing a complaint for failure to include facts constituting specific defect, how the product as made was defective or dangerous, or how it could have been made safer).

6.      Assuming Plaintiffs are asserting a *design defect* claim, Plaintiffs plead nothing showing how Motrin and/or Tylenol's design or chemical composition was defective, including why and how the design failed, whether a safer alternative existed at the time, and the alternative design.    *See* Compl. ¶¶ 47-58, 68-79. Assuming Plaintiffs are asserting a *manufacturing defect* claim, Plaintiffs do not plead how the Motrin and/or Tylenol Mrs. Gomez used was not manufactured in accordance with an acceptable design or how the manufacturing process was the cause of the product malfunction. *Id.*

7.      In sum, Plaintiffs recite a number of legal elements accompanied by conclusory allegations virtually unsupported by any actual factual allegations. Read liberally for supporting factual allegations, the Complaint alleges only that Yamile Gomez suffered from headaches,

body aches and fever she had prior to her doctor prescribing and/or administering Tylenol and/or

Motrin, she purchased Tylenol and/or Motrin per her doctor's orders, and she was later

diagnosed with Stevens-Johnson Syndrome. *See* Compl. ¶¶ 8-11. Beyond those broad

allegations, however, the Complaint alleges nothing factually. In fact, the Complaint fails to

clearly allege which product Mrs. Gomez purchased – Tylenol or Motrin – and whether the

Tylenol or Motrin was prescription or over-the-counter.

       8.    Plaintiff Manuel Jesus Gomez's loss of consortium claim is purely derivative of

Yamile A. Gomez's claims. *See Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971) (a spouse "may

recover only if her husband has a cause of action against the same defendant."); *ACandS, Inc. v.*

*Carol H. Redd*, 703 So. 2d 492, 494 (Fla. 3d DCA 1997) (*quoting Faulkner v. Allstate Ins. Co.*,

367 So.2d 214, 217 (Fla. 1979)) ("[a wife's] claim for loss of consortium is derivative in nature

and wholly dependent on her husband's ability to recover"); *Davis v. Asbell*, 328 So. 2d 204, 205

(Fla. 1st DCA 1976) ("[t]he derivative cause of action for loss of consortium is subordinate to

the primary action, and being so, that a judicial determination in the primary action as to the

question of liability is binding upon the subordinate action for loss of consortium."). Therefore,

because the underlying claims fail to plead facts sufficient to state causes of action, the derivative

loss of consortium claim must also fail.

       WHEREFORE, for all the reasons set forth in the preceding paragraphs, Plaintiffs'

complaint should be dismissed.

                                    _Penelope A. Dixon_
                                      Penelope A. Dixon
                                      Florida Bar No. 335680
                                      David J. Walz
                                      Florida Bar Number 697273
                                      CARLTON FIELDS, P.A.
                                      Post Office Box 3239
                                      Tampa, Florida 33601

| | |
|---|---|
| Telephone: | (813) 223-7000 |
| Facsimile: | (813) 229-4133 |
| E-Mail: | pdixon@carltonfields.com |
| | dwalz@carltonfields.com |

Attorneys for McNEIL-PPC, Inc. and
Johnson & Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of this motion was mailed to Alex Alvarez and

Phillip E. Holden, 355 Palermo Avenue, Coral Gables, FL 33134; Hildy M. Sastre, Miami

Center, Suite 2400, 201 S. Biscayne Blvd., Miami, FL 33131; and Dennis M. O'Hara, Jason A.

Glusman and Rafferty Kellogg, P. O. Box 14460, Ft. Lauderdale, FL 33302, this 24th day of

August, 2009.

_____
Attorney

IN THE CIRCUIT COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her husband,

    Plaintiffs,

v.

PFIZER, INC.,  a Delaware Corporation for
Profit, MCNEIL-PPC, INC., a New Jersey
Corporation for Profit, JOHNSON &
JOHNSON COMPANY,  a New Jersey
Corporation for Profit, and PUBLIX
SUPERMARKETS, INC., a Florida
Corporation for Profit,

    Defendants.

_____/

Case No.: 09-50417 CA 06

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT[1]

    Defendants, McNEIL-PPC, Inc. ("McNeil") and Johnson & Johnson (incorrectly

identified in the complaint as "Johnson & Johnson Company") ("J&J") (collectively,

"Defendants"), through their attorneys and pursuant to Rule 1.140(b)(6), Florida Rules of Civil

Procedure, move to dismiss Plaintiffs' Complaint and state:

    1.    The Complaint fails to plead ultimate facts in support of elements of Plaintiffs'

claims, whether they are based in strict liability or negligence. Additionally, Plaintiffs' attempted

negligence and strict liability claims are hopelessly intermingled.  Because the underlying claims

fail to plead facts sufficient to state causes of action, the derivative loss of consortium must also

fail.  Thus, dismissal is warranted.

---

[1] The undersigned inadvertently served this document on August 24, 2009 with the incorrect case number.

2.      A complaint "must set out the elements and the facts that support them so that the court and the defendant can clearly determine what is being alleged" and "must set forth factual assertions that can be supported by evidence which gives rise to legal liability.  It is insufficient to plead opinions, theories, legal conclusions, or argument." *Barrett v. City of Margate*, 743 So. 2d 1160, 1162-63 (4th DCA 1999); *Horowitz v. Laske*, 855 So. 2d 169, 172-73 (5th DCA 2003) (requiring the parties "to state what ultimate facts pleaded in the complaint satisfied the elements of the tort," recognizing that "Florida is a fact-pleading jurisdiction," and holding that "Florida's pleading rule forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it").

3.      Under Florida law, a product liability plaintiff may proceed under theories of strict liability and/or negligence. *See Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1049-50, 1052 (Fla. 1981); *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (4th DCA 1998). Although a plaintiff may pursue either theory or both theories, the doctrines of strict liability and negligence are separate and distinct from each other. *See Ferayorni*, 711 So. 2d at 1170.   Under either doctrine, a plaintiff in a product liability case must prove a defect in the product.  *See Rodriguez v. Nat'l Detroit, Inc.*, 857 So. 2d 199, 201 (3d DCA 2003) (plaintiff must prove defect "in a products liability action brought under a theory of either strict liability or negligence" ); *Cassisi v. Maytag Co.,* 396 So. 2d 1140, 1143 (1st DCA 1981) (plaintiffs bear "the burden, whether their case is founded in negligence . . . or strict liability, of establishing (1) that a defect was present in the product"). Thus, under a negligence theory, a plaintiff may allege and seek to prove negligent manufacture, negligent design, and/or negligent failure to warn.  Under a strict liability theory, a plaintiff may allege and seek to prove a strict liability manufacturing defect, strict liability design defect, and/or strict liability failure to warn.  As with the overall theories,

however, the three types of defects within either negligence or strict liability are analytically distinct and must be factually pled and proved in different ways.

4.      Plaintiffs fail to specify which type of negligent theory they assert and what facts support the allegedly negligent manufacture, design or warnings.  Whichever attempted alleged theories of negligence – manufacture, design, or failure to warn – all are conclusory and fail to allege anything more than a recitation of the elements of duty and breach generally, a generalized recitation of alleged breaches, untethered to any actual facts, and the conclusion that those alleged breaches caused injury to Plaintiff Yamile Gomez.  In fact, Counts III and V fail to even identify a negligent act by Defendants, much less how such an act caused harm to Plaintiffs.

5.      Likewise, Plaintiffs' strict liability claims (Counts IV and VI) must be dismissed because they fail to assert the elements nor the ultimate facts, which would support the elements, necessary to plead a strict products liability claim.  *Barrett v. City of Margate*, *supra*; *Rice v. Walker*, 359 So. 2d 891, 892 (3d DCA 1978) (dismissing a complaint for failure to include facts constituting specific defect, how the product as made was defective or dangerous, or how it could have been made safer).

6.      Assuming Plaintiffs are asserting a *design defect* claim, Plaintiffs plead nothing showing how Motrin and/or Tylenol's design or chemical composition was defective, including why and how the design failed, whether a safer alternative existed at the time, and the alternative design.   *See* Compl. ¶¶ 47-58, 68-79.  Assuming Plaintiffs are asserting a *manufacturing defect* claim, Plaintiffs do not plead how the Motrin and/or Tylenol Mrs. Gomez used was not manufactured in accordance with an acceptable design or how the manufacturing process was the cause of the product malfunction. *Id.*

7.     In sum, Plaintiffs recite a number of legal elements accompanied by conclusory allegations virtually unsupported by any actual factual allegations.  Read liberally for supporting factual allegations, the Complaint alleges only that Yamile Gomez suffered from headaches, body aches and fever she had prior to her doctor prescribing and/or administering Tylenol and/or Motrin, she purchased Tylenol and/or Motrin per her doctor's orders, and she was later diagnosed with Stevens-Johnson Syndrome.  *See* Compl. ¶¶ 8-11.  Beyond those broad allegations, however, the Complaint alleges nothing factually.  In fact, the Complaint fails to clearly allege which product Mrs. Gomez purchased – Tylenol or Motrin – and whether the Tylenol or Motrin was prescription or over-the-counter.

8.     Plaintiff Manuel Jesus Gomez's loss of consortium claim is purely derivative of Yamile A. Gomez's claims.  *See Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971) (a spouse "may recover only if her husband has a cause of action against the same defendant."); *ACandS, Inc. v. Carol H. Redd*, 703 So. 2d 492, 494 (Fla. 3d DCA 1997) (*quoting Faulkner v. Allstate Ins. Co.*, 367 So.2d 214, 217 (Fla. 1979)) ("[a wife's] claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover"); *Davis v. Asbell*, 328 So. 2d 204, 205 (Fla. 1st DCA 1976) ("[t]he derivative cause of action for loss of consortium is subordinate to the primary action, and being so, that a judicial determination in the primary action as to the question of liability is binding upon the subordinate action for loss of consortium.").  Therefore, because the underlying claims fail to plead facts sufficient to state causes of action, the derivative loss of consortium claim must also fail.

WHEREFORE, for all the reasons set forth in the preceding paragraphs, Plaintiffs' complaint should be dismissed.

Penelope A. Dixon
Florida Bar No. 335680
David J. Walz
Florida Bar Number 697273
CARLTON FIELDS, P.A.
Post Office Box 3239
Tampa, Florida 33601
Telephone:     (813) 223-7000
Facsimile:     (813) 229-4133
E-Mail:        pdixon@carltonfields.com
               dwalz@carltonfields.com
Attorneys for McNEIL-PPC, Inc. and
Johnson & Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of this motion was mailed to Alex Alvarez and Phillip E. Holden, 355 Palermo Avenue, Coral Gables, FL 33134; Hildy M. Sastre, Miami Center, Suite 2400, 201 S. Biscayne Blvd., Miami, FL 33131; and Dennis M. O'Hara, Jason A. Glusman and Rafferty Kellogg, P. O. Box 14460, Ft. Lauderdale, FL 33302, this 26th day of August, 2009.

Attorney

15571406.4

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 09-50417 CA 06

**RECEIVED**

**AUG 2 6 2009**

**CARLTON FIELDS**

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her Husband

                  Plaintiffs,

vs.

PFIZER, INC., a Delaware Corporation for
Profit, MCNEIL-PPC, INC., a New Jersey
Corporation for Profit, JOHNSON &
JOHNSON COMPANY, a New Jersey
Corporation for Profit, and PUBLIX SUPER
MARKETS, INC., a Florida Corporation for
Profit,

                  Defendants.
_____/

## ANSWER, AFFIRMATIVE DEFENSES & JURY DEMAND

      Defendant Pfizer Inc ("Pfizer"), by and through its attorneys, hereby sets forth the following Answer and Affirmative Defenses to the Complaint filed by Plaintiffs Yamile A. Gomez and Manuel Jesus Gomez ("Plaintiffs") and requests trial by jury. Any allegation, averment, contention or statement in the Complaint not specifically and unequivocally admitted is denied. Pfizer responds to each of the paragraphs of the Complaint as follows:

## RESPONSE TO "JURISDICTION & PARTIES"

    1.    Pfizer admits that Plaintiffs seek more than $15,000 in damages in this action, but denies that Plaintiffs are entitled to recover any damages.

    2.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the Complaint, and for that reason, denies each of them.

- 1 -

3.     Pfizer admits that it is a Delaware corporation with its principal place of business in New York, that it developed the prescription medication Zoloft® (setraline hydrochloride), and that it manufactures, markets, and distributes Zoloft® throughout the United States.  Pfizer denies each of the remaining allegations of paragraph 3 of the Complaint.

4.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 of the Complaint, and for that reason, denies each of them.

5.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint, and for that reason denies each of them.

6.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint, and for that reason denies each of them.

### RESPONSE TO "ALLEGATIONS COMMON TO ALL COUNTS"

7.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint, and for that reason denies each of them.

8.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, and for that reason denies each of them.

9.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint, and for that reason denies each of them.

10.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint, and for that reason denies each of them.

11.     Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, and for that reason denies each of them.

615763v2

12.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and for that reason denies each of them.

13.    Pfizer denies each allegation of paragraph 13 of the Complaint.

14.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and for that reason denies each of them.

15.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, and for that reason denies each of them.

16.    Pfizer denies each allegation of paragraph 16 of the Complaint.

**RESPONSE TO "COUNT I
NEGLIGENCE CLAIM AGAINST PFIZER"**

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

17.    Pfizer denies each allegation of paragraph 17 of the Complaint.

18.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint, and for that reason denies each of them.

19.    Pfizer denies each allegation of paragraph 19 of the Complaint.

20.    Pfizer denies each allegation of paragraph 20 of the Complaint.

21.    Paragraph 21 of the Complaint, and each of its subparts, states legal conclusions as to which no responsive pleading is required.  Should a response be deemed required, Pfizer denies that it violated any applicable law, duty or standard of care in connection with Zoloft®.

- 3 -

22.    Pfizer denies each allegation of paragraph 22 of the Complaint, including each subpart.

23.    Pfizer denies each allegation of paragraph 23 of the Complaint.

24.    Pfizer denies each allegation of paragraph 24 of the Complaint.

25.    Pfizer denies each allegation of paragraph 25 of the Complaint.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 25 of the Complaint.

## RESPONSE TO "COUNT II
## STRICT LIABILITY CLAIM AGAINST PFIZER"

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

26.    Pfizer denies each allegation of paragraph 26 of the Complaint.

27.    Pfizer denies each allegation of paragraph 27 of the Complaint.

28.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint, and for that reason denies each of them.

29.    Pfizer denies each allegation of paragraph 29 of the Complaint.

30.    Pfizer denies each allegation of paragraph 30 of the Complaint.

31.    Pfizer denies each allegation of paragraph 31 of the Complaint.

32.    Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint, and for that reason denies each of them.

33.    Pfizer denies each allegation of paragraph 33 of the Complaint.

34.    Pfizer denies each allegation of paragraph 34 of the Complaint.

615763v2

35.   Pfizer denies each allegation of paragraph 35 of the Complaint.

36.   Pfizer denies each allegation of paragraph 36 of the Complaint.

37.   Pfizer denies each allegation of paragraph 37 of the Complaint.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 37 of the Complaint.

## RESPONSE TO "COUNT III NEGLIGENCE CLAIM AGAINST MCNEIL AND JOHNSON & JOHNSON"

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

38.   The allegations of paragraph 38 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint and for that reason denies each of them.

39.   The allegations of paragraph 39 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 of the Complaint and for that reason denies each of them.

40.   The allegations of paragraph 40 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint and for that reason denies each of them.

41.   The allegations of paragraph 41 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required,

Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint and for that reason denies each of them.

42.     The allegations of paragraph 42 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint and for that reason denies each of them, including each subpart.

43.     The allegations of paragraph 43 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint and for that reason denies each of them, including each subpart.

44.     The allegations of paragraph 44 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 of the Complaint and for that reason denies each of them.

45.     The allegations of paragraph 45 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint and for that reason denies each of them.

46.     The allegations of paragraph 46 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required,

Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 of the Complaint and for that reason denies each of them.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 46 of the Complaint.

## RESPONSE TO "COUNT IV
## STRICT LIABILITY CLAIM AGAINST MCNEIL AND JOHNSON & JOHNSON"

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

47.     The allegations of paragraph 47 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 of the Complaint and for that reason denies each of them.

48.     The allegations of paragraph 48 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 of the Complaint and for that reason denies each of them.

49.     The allegations of paragraph 49 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint and for that reason denies each of them.

50.     The allegations of paragraph 50 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint and for that reason denies each of them.

51.     The allegations of paragraph 51 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint and for that reason denies each of them.

52.     The allegations of paragraph 52 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint and for that reason denies each of them.

53.     The allegations of paragraph 53 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 of the Complaint and for that reason denies each of them.

54.     The allegations of paragraph 54 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint and for that reason denies each of them.

55.     The allegations of paragraph 55 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint and for that reason denies each of them.

56.     The allegations of paragraph 56 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required,

615763v2

Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 of the Complaint and for that reason denies each of them.

57.    The allegations of paragraph 57 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 of the Complaint and for that reason denies each of them.

58.    The allegations of paragraph 58 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58 of the Complaint and for that reason denies each of them.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 58 of the Complaint.

## RESPONSE TO "COUNT V NEGLIGENCE CLAIM AGAINST MCNEIL AND JOHNSON & JOHNSON"

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

59.    The allegations of paragraph 59 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 of the Complaint and for that reason denies each of them.

60.    The allegations of paragraph 60 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 of the Complaint and for that reason denies each of them.

615763v2

61.     The allegations of paragraph 61 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint and for that reason denies each of them.

62.     The allegations of paragraph 62 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint and for that reason denies each of them.

63.     The allegations of paragraph 63 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 of the Complaint and for that reason denies each of them, including each subpart.

64.     The allegations of paragraph 64 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 of the Complaint and for that reason denies each of them, including each subpart.

65.     The allegations of paragraph 65 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65 of the Complaint and for that reason denies each of them.

66.     The allegations of paragraph 66 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 of the Complaint and for that reason denies each of them.

67.     The allegations of paragraph 67 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 of the Complaint and for that reason denies each of them.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 67 of the Complaint.

### RESPONSE TO "COUNT VI
### STRICT LIABILITY CLAIM AGAINST MCNEIL AND JOHNSON & JOHNSON"

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

68.     The allegations of paragraph 68 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68 of the Complaint and for that reason denies each of them.

69.     The allegations of paragraph 69 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69 of the Complaint and for that reason denies each of them.

70.     The allegations of paragraph 70 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required,

- 11 -

Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 of the Complaint and for that reason denies each of them.

71.    The allegations of paragraph 71 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 of the Complaint and for that reason denies each of them.

72.    The allegations of paragraph 72 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 of the Complaint and for that reason denies each of them.

73.    The allegations of paragraph 73 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73 of the Complaint and for that reason denies each of them.

74.    The allegations of paragraph 74 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 of the Complaint and for that reason denies each of them.

75.    The allegations of paragraph 75 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75 of the Complaint and for that reason denies each of them.

615763v2

76.    The allegations of paragraph 76 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint and for that reason denies each of them.

77.    The allegations of paragraph 77 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 of the Complaint and for that reason denies each of them.

78.    The allegations of paragraph 78 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the Complaint and for that reason denies each of them.

79.    The allegations of paragraph 79 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79 of the Complaint and for that reason denies each of them.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 79 of the Complaint.

**RESPONSE TO "COUNT VII**
**STRICT LIABILITY CLAIM AGAINST PUBLIX"**

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

80.    The allegations of paragraph 80 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required,

615763v2

Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 of the Complaint and for that reason denies each of them.

81.    The allegations of paragraph 81 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 of the Complaint and for that reason denies each of them.

82.    The allegations of paragraph 82 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint and for that reason denies each of them.

83.    The allegations of paragraph 83 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint and for that reason denies each of them.

84.    The allegations of paragraph 84 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84 of the Complaint and for that reason denies each of them.

85.    The allegations of paragraph 85 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85 of the Complaint and for that reason denies each of them.

615763v2

86.     The allegations of paragraph 86 of the Complaint are not directed at Pfizer; therefore, no responsive pleading is required.  To the extent a response is deemed required, Pfizer is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 of the Complaint and for that reason denies each of them.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 86 of the Complaint.

**RESPONSE TO "COUNT VIII**
**CLAIM FOR LOSS OF CONSORTIUM AGAINST DEFENDANTS"**

Pfizer restates and incorporates by reference each of the preceding paragraphs of this Answer.

87.     Pfizer denies each allegation of paragraph 87 of the Complaint.

Pfizer denies that Plaintiffs are entitled to any of the relief requested in the unnumbered paragraph immediately following paragraph 87 of the Complaint.

**AFFIRMATIVE DEFENSES**

**First Defense**

Plaintiffs' Complaint fails to state a claim against Pfizer upon which relief may be granted.

**Second Defense**

Plaintiffs' claims may be barred by the doctrine(s) contained in Restatement (Second) of Torts § 402A, Comment k, and/or Restatement (Third) of Torts: Products Liability § 6.  The pharmaceutical product in question is useful and desirable, and any risk claimed by Plaintiffs with its use and the alleged injury, to the extent it exists, is unavoidable.

- 15 -

### Third Defense

Plaintiffs' claims may be barred, in whole or in part, by misuse or unintended use of Zoloft®.

### Fourth Defense

Plaintiffs' claims may be barred, in whole or in part, by the "learned intermediary" or "informed intermediary" doctrine.

### Fifth Defense

Plaintiffs' claims may be barred because their injuries, if any, were actually or proximately caused, in whole or in part, by the intervening or superseding conduct of Plaintiffs, independent third parties, or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from Pfizer's conduct or control.

### Sixth Defense

Plaintiffs' claims may be barred, in whole or in part, by the doctrine of informed consent.

### Seventh Defense

Plaintiffs' claims may be barred, in whole or in part, because Plaintiffs' injuries were caused, in whole or in part, by negligence, fault, or wrongful conduct of Plaintiffs or by third parties, and Plaintiffs' claims may be barred or limited by the doctrines of comparative fault or contributory negligence.

### Eighth Defense

Plaintiffs' claims may be barred, in whole or in part, by applicable statutes of limitations.

### Ninth Defense

Plaintiffs' claims may be barred, in whole or in part, by the doctrines of waiver, laches, or estoppel.

615763v2

**Tenth Defense**

Plaintiffs' damages, if any, may be barred, limited, or offset in the amount of any reimbursement received by Plaintiffs as a result of any insurance or other health benefits plan, or any amounts paid by any insurance or other health benefits plan.

**Eleventh Defense**

Plaintiffs' claims may be barred, in whole or in part, by the doctrine of assumption of risk.

**Twelfth Defense**

Plaintiffs' claims are barred because Zoloft® was designed, manufactured, and marketed in accordance with the state of the art and when Zoloft® left the control of Pfizer, no practical and technically feasible alternative formulation was available that would have prevented the harm for which Plaintiffs seek to recover without substantially impairing the safety, efficacy, or usefulness of the product for its intended use.

**Thirteenth Defense**

Plaintiffs' damages, if any, may be limited, in whole or in part, by Plaintiffs' failure to mitigate.

**Fourteenth Defense**

Plaintiffs' claims are barred, in whole or in part, because Zoloft® is comprehensively regulated by the United States Food and Drug Administration ("FDA") pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated thereunder, and Plaintiffs' claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Zoloft®. Accordingly, Plaintiffs' claims are

615763v2

preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

## Fifteenth Defense

Plaintiffs' claims are barred, in whole or in part, by the deference that common law gives to discretionary actions by FDA under the FDCA.

## Sixteenth Defense

Pfizer is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute of the State of Florida or other applicable law.

## Seventeenth Defense

Plaintiffs' claims may be barred, in whole or in part, under the doctrine of primary jurisdiction, in that the pertinent conduct of Pfizer and all its activities with respect to the subject product Zoloft® have been and are conducted under the supervision of the United States Food and Drug Administration.

## Eighteenth Defense

To the extent any part of Plaintiffs' Complaint may be construed as alleging or seeking recovery of punitive or exemplary damages against Pfizer, unless Pfizer's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate Pfizer's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the Florida constitution, and would be improper under the common law and public policies of Florida.

## Nineteenth Defense

To the extent any part of Plaintiffs' Complaint may be construed as alleging or seeking recovery of punitive or exemplary damages against Pfizer, any such claim of Plaintiffs for

- 18 -

punitive damages against Pfizer cannot be maintained unless the trial is bifurcated.  Any award of punitive damages without bifurcating the trial and trying all punitive damages issues only if and after liability on the merits has been found would violate Pfizer's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the Florida constitution and would be improper under the common law and public policies of Florida.

**Twentieth Defense**

To the extent any part of Plaintiffs' Complaint may be construed as alleging or seeking recovery of punitive or exemplary damages against Pfizer, any such claim of Plaintiffs for punitive damages against Pfizer cannot be maintained, because an award of punitive damages under applicable law would be unlawful and unauthorized, and would be void for vagueness, both facially and as applied, as a result of, among other deficiencies, the absence of adequate notice of what conduct is subject to punishment; the absence of adequate notice of what punishment may be imposed; and the absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, and by the Florida constitution, and the common law and public policies of Florida.

**Twenty-First Defense**

To the extent any part of Plaintiffs' Complaint may be construed as alleging or seeking recovery of punitive or exemplary damages against Pfizer, any such claim of Plaintiffs for punitive damages against Pfizer cannot be maintained, because any award of punitive damages under applicable law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of

deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of Defendant Pfizer, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate Pfizer's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process and equal protection provisions of the Florida constitution, and would be improper under the common law and public policies of Florida.

**Twenty-Second Defense**

To the extent any part of Plaintiffs' Complaint may be construed as alleging or seeking recovery of punitive or exemplary damages against Pfizer, any award of punitive damages based on anything other than Defendant Pfizer's conduct in connection with the design, manufacture, and sale of Zoloft®, the specific product that is the subject of this lawsuit, would violate the due process clause of the Fourteenth Amendment to the United States Constitution and the due process provisions of the Florida constitution, and would be improper under the common law and public policies of Florida, because any other judgment for punitive damages in this case cannot protect Defendant Pfizer against impermissible multiple punishment for the same wrong and against punishment for extra territorial conduct, including especially conduct that is lawful in states other than Florida.  In addition, any such award would violate principles of comity under the laws of that state.

- 20 -

**Twenty-Third Defense**

Plaintiffs' claims are barred because of Plaintiff's failure to join necessary and indispensable parties.

**Twenty-Fourth Defense**

The claims asserted in the Complaint are barred because the risks, if any, associated with the use of Zoloft® are outweighed by Zoloft®'s utility.

**Twenty -Fifth Defense**

To the extent Plaintiffs' claims relate to Pfizer's advertising, public statements, lobbying, or other activities protected by the First Amendment to the Constitution of the United States or by the Constitution of Florida, such claims are barred.

**Twenty-Sixth Defense**

Plaintiffs may be barred, in whole or in part, from recovery due to res judicata, collateral estoppel, or by release of claims.

**Twenty-Seventh Defense**

Pfizer states that Zoloft®, a product which Pfizer designs, manufactures, and distributes is free from all defects at the time it leaves the care, custody, and control of Pfizer and is reasonably fit for its intended and reasonably anticipated use and is marketed with adequate and sufficient warnings.

**Twenty-Eighth Defense**

Pfizer states that Zoloft®, a product which Pfizer designs, manufactures, and distributes meets all applicable Food and Drug Administration standards.

**Twenty-Ninth Defense**

If Pfizer is deemed to be the manufacturer of the subject product, either factually or legally, then Pfizer would show at the time the pharmaceutical product left its care, custody, and control, Pfizer did not know and, in light of then-existing, reasonably available scientific and technological knowledge, could not have known of the design characteristic that allegedly caused plaintiffs' loss and/or damage or the danger of such characteristic, nor could Pfizer have known of any alternative design that may be identified by plaintiffs.

**Thirtieth Defense**

If Pfizer is liable to plaintiffs, which liability Pfizer expressly denies, any liability is limited to Pfizer's percentage of fault as provided by section 768.81, Florida Statutes, and Fabre v. Marin, 623 So. 2d 1182 (Fla. 1993), or other applicable law.

**Thirty-First Defense**

The claims of plaintiffs may be barred, in whole or in part, because the manufacturing, labeling, packaging, and advertising of Zoloft® complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state and any agency thereof.

**Thirty-Second Defense**

There is no causal relationship between Pfizer's conduct and the injuries and damages alleged by plaintiffs in the Complaint.

**Thirty-Third Defense**

The claims of plaintiffs may be barred, in whole or in part, because the advertisements, if any, and labeling with respect to Zoloft® were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

### Thirty-Fourth Defense

To the extent that plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Pfizer's rights under the United States Constitution and analogous provisions of the Florida constitution.

### Thirty-Fifth Defense

Losses, if any, to plaintiffs are subject to an offset for benefits received by plaintiff resulting from the alleged use of Zoloft®.

### Thirty-Sixth Defense

The claims of plaintiffs may be barred, in whole or in part, as a result of any alteration made in the allegedly defective product.

### Thirty-Seventh Defense

Pfizer is entitled to credit for any settlement of claims for alleged injuries and damages made by plaintiffs with any other defendant or other person or entity.

### Thirty-Eighth Defense

This Court should abstain from adjudicating plaintiffs' claims relating to warnings and labeling in deference to the interpretation of regulations relating to labeling by the FDA.

### Thirty-Ninth Defense

Pfizer specifically denies all allegations of duty, breach, negligence, defect, causation, and all forms of damages and demands strict proof thereof.

Pfizer reserves the right to amend, or to seek leave to amend, its Answer and Affirmative Defenses as its investigation and discovery of the case proceeds.

## JURY TRIAL DEMANDED

Pfizer hereby demands a trial by jury on all issues so triable.

- 23 -

615763v2

WHEREFORE, Defendant Pfizer requests that Plaintiffs' Complaint be dismissed in its entirety with prejudice, that judgment be entered in favor of Pfizer, that Pfizer be awarded costs and, to the extent provided by law, attorneys' fees, and any such other relief as the Court may deem proper.

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2009 a true and correct copy of the foregoing **ANSWER, AFFIRMATIVE DEFENSES & JURY DEMAND** was served via United States Mail, postage prepaid on Alex Alvarez, Esq., The Alvarez Law Firm, 355 Palermo Avenue, Coral Gables, Florida 33134;  Penelope A. Dixon, Esq., Carlton Fields, P.A. 4221 West Boy Scout Boulevard, Suite 1000, Tampa, Florida 33607-5736;   and Jason Glusman, Esq., Wicker Smith, 515 E Las Olas Boulevard, Suite 1400, P.O. Box 14460, Fort Lauderdale, FL 33302.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone:     (305) 358-5171
Facsimile:     (305) 358-7470

By:

HILDY M. SASTRE
Florida Bar No.  0026492
MIHAI M. VRASMASU
Florida Bar No.  0028610

*Attorneys for Pfizer, Inc.*

- 24 -

# EXHIBIT B

## Dixon, Penelope A.

**From:** alex@integrityforjustice.com
**Sent:** Friday, August 14, 2009 6:12 PM
**To:** Dixon, Penelope A.; Phillip Holden
**Subject:** Re: Gomez v. Pfizer et al.

Yes

Alex Alvarez
Board Certified Civil Trial Lawyer

The Alvarez Law Firm
355 Palermo Ave
Coral Gables, Florida 33134

office 305-444-7675
fax 305-444-0075
email:alex@integrityforjustice.com
website: www.integrityforjustice.com

Sent via blackberry wireless

---

**From**: "Dixon, Penelope A."
**Date**: Fri, 14 Aug 2009 17:25:25 -0400
**To**: <phillip@integrityforjustice.com>; <alex@integrityforjustice.com>
**Subject**: Gomez v. Pfizer et al.

Gentlemen,

    Please confirm the following:

    1)   Plaintiffs are, and at the time of filing the complaint were, Florida citizens.  If they were not Florida citizens during those times, please specify which state(s) Plaintiffs were and currently are citizens; and

    2)   The amount in controversy exceeded $75,000, exclusive of interest and cost, at the time of filing the complaint and continues to exceed that amount.

    Thanks and I look forward to receiving a response.   Have a great weekend.

## CARLTON FIELDS
### ATTORNEYS AT LAW

**Penelope A. Dixon**
Attorney At Law

4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida  33607-5780

direct 813.229.4335

8/20/2009

fax 813.229.4133
pdixon@carltonfields.com
www.carltonfields.com
bio
vcard

Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.

Please consider the environment before printing this email.

# EXHIBIT C

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 09-50417 CA 06

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her Husband

        Plaintiffs,

vs.

PFIZER, INC., a Delaware Corporation for
Profit, MCNEIL-PPC, INC., a New Jersey
Corporation for Profit, JOHNSON &
JOHNSON COMPANY, a New Jersey
Corporation for Profit, and PUBLIX SUPER
MARKETS, INC., a Florida Corporation for
Profit,

        Defendants.
_____/

## CONSENT TO REMOVAL

Defendant, Pfizer Inc, hereby consents to the removal of the action styled *Yamile A. Gomez and Manuel Jesus Gomez v. Pfizer, Inc., et al.*, from the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where it is currently pending as Case Number 09-50417 CA 06 to the United States District Court for the Southern District of Florida, and further states as follows:

1.     This consent to removal is being filed within thirty (30) days of the date it was first ascertained that this action is removable.

2.     In consenting to removal, the undersigned defendant does not intend to waive any rights or defenses to which it is otherwise entitled, including but not limited to, those items set forth in Rule 12(b), Federal Rules of Civil Procedure.

Dated this _19th_ day of August, 2009.

> SHOOK, HARDY & BACON L.L.P.
> Miami Center, Suite 2400
> 201 South Biscayne Boulevard
> Miami, FL 33131-4332
> Telephone: 305.358.5171
> Facsimile:  305.358.7470
>
> By:  _____(0028610) for____
>     HILDY M. SASTRE
>     Florida Bar No. 026492
>
> _Counsel for Pfizer Inc_

# EXHIBIT D

## DECLARATION OF PAUL HINES

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1.      My name is Paul Hines.  I am over 18 years of age and have personal knowledge of the facts and representations set forth in this declaration.

2.      I am, and at all times material was, the Director of Pharmacy Administration at Publix Super Markets, Inc. ("Publix").

3.      Publix is not, and has never been, in the business of making, creating, manufacturing, assembling, designing, sterilizing, testing, evaluating, packaging, and/or assisting in any of the aforesaid acts involving Zoloft, Motrin, and Tylenol.

4.      Publix's only involvement with any prescription medicine allegedly dispensed to Plaintiff, if any, was dispensing the prescription medicine by filling prescriptions for Plaintiff in accordance with the instructions of her doctors.  Publix has not dispensed prescriptions for Zoloft, Motrin, or Tylenol to the Plaintiff at the Publix Pharmacy at Store 0031 located at 9755 N.W. 41st Street, in Miami-Dade County, nor at any other Publix Pharmacy location.

5.      Publix's only involvement with over-the-counter Motrin and Tylenol, if any, was the receipt of over-the-counter Motrin and Tylenol in their original sealed containers and their retail sale in the original unbroken containers without any preparation of over-the-counter Motrin and Tylenol on Publix's part.

6.      At all relevant times, Publix had no knowledge of any defective condition as alleged in the complaint with respect to Zoloft, Motrin, and Tylenol, and did not in any way cause or contribute to any alleged defective condition.

7.      Publix had no reason to know of such dangers as alleged in the complaint with respect to Zoloft, Motrin, and Tylenol.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ___9/4___, 2009

_____

**PAUL HINES**

State of Florida
County of Polk

Before me appeared Paul Hines, this 4th day of September, 2009.

Sheree' R. Barton

Sheree' R. Barton
Commission # DD467301
Expires September 16, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

15540165.7

# EXHIBIT E

IN THE CIRCUIT COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

YAMILE A. GOMEZ, and
MANUEL JESUS GOMEZ, her husband,

     Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation for
Profit, MCNEIL-PPC, INC., a New Jersey
Corporation for Profit, JOHNSON &
JOHNSON COMPANY, a New Jersey
Corporation for Profit, and PUBLIX
SUPERMARKETS, INC., a Florida
Corporation for Profit,

     Defendants.

Case No.: 09-50417 CA 06

_____/

## NOTICE OF FILING NOTICE OF REMOVAL OF CIVIL ACTION

TO:    Clerk of the Circuit Court of Miami-Dade County, Florida:

You are hereby notified that Defendants Johnson & Johnson (incorrectly identified in the Complaint as "Johnson & Johnson Company" and McNEIL-PPC, Inc. (collectively, "Defendants") on the 10th day of September, 2009, filed in the United States District Court for the Southern District of Florida, a Notice of Removal to Federal Court of the above-entitled cause, a copy of which is attached hereto and made a part of the Notice to Clerk, for your information and guidance. This Notice serves to effect full removal of this case pursuant to 28 U.S.C. § 1446(d), thereby precluding this state court from proceeding further in this case, unless and until this case is remanded hereto by the United States District Court.

Penelope A. Dixon
Florida Bar Number 335680
David J. Walz

15637964.1

Florida Bar Number 697273
CARLTON FIELDS, P.A.
Post Office Box 3239
Tampa, Florida 33601
Telephone:  (813) 223-7000
Fax:          (813) 229-4133
Email:        pdixon@carltonfields.com
               dwalz@carltonfields.com
Attorneys for McNEIL-PPC, Inc. and
Johnson & Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of this notice was mailed to Alex Alvarez and

Phillip E. Holden, 355 Palermo Avenue, Coral Gables, FL 33134; Hildy M. Sastre, Miami

Center, Suite 2400, 201 S. Biscayne Blvd., Miami, FL 33131; and Dennis M. O'Hara, Jason

A. Glusman and Rafferty Kellogg, P. O. Box 14460, Ft. Lauderdale, FL 33302, this 10th day

of September, 2009.

Attorney

℀ JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| YAMILE A. GOMEZ, and MANUEL JESUS GOMEZ, her husband | MCNEIL-PPC, INC. |

**(b)** County of Residence of First Listed Plaintiff   Miami - Dade County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Alex Alvarez, The Alvarez Law Firm            (305) 444-7675
355 Palermo Avenue
Coral Gables, FL 33134

Attorneys (If Known)

Penelope A. Dixon, Carlton Fields
P.O. Box 3239, Tampa, FL 33607

CIV-UNGARO

MAGISTRATE JUDGE
SIMONTON

FILED CIV CDC
SEP 1 0 2009
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

09cv22700 – UNGARO / SIMONTON

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO        b) Related Cases ☐ YES ☐ NO

JUDGE                                 DOCKET NUMBER

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

## VII. CAUSE OF ACTION
28 U.S.C. §§ 1332, 1441(b), 1446(a)    Product Liability

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 75,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Penelope A. Dixon

DATE
September 10 2009

FOR OFFICE USE ONLY
AMOUNT $ 350.00   RECEIPT # 1008164
09/10/09